PHILLIP A. TALBERT
United States Attorney
VERONICA M.A. ALEGRIA
ROBERT C. ABENDROTH
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

**FILED**

**Jan 20, 2023**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

AMANI INVESTMENTS, LLC,
dba Coinucopia

Defendant.

CASE NO.   2:23-cr-0014 JAM

Violation: 18 U.S.C. § 371 – Conspiracy to Commit an Offense

I N F O R M A T I O N

COUNT ONE: [18 U.S.C. § 371 – Conspiracy to Commit an Offense]

The United States Attorney charges:

I.      Background

At all times relevant to this Information:

A.      The Defendant Company

1.      AMANI INVESTMENTS, LLC, dba Coinucopia (hereinafter "Defendant") is a California Limited Liability Company which was headquartered in Folsom, California in the State and Eastern District of California.

B.      The Bank Secrecy Act

2.      The Bank Secrecy Act ("BSA"), codified at Title 31, United States Code, Sections 5311,

*et seq*., is a group of laws enacted by Congress to combat the use of financial institutions and money services businesses ("MSBs") in laundering the proceeds of criminal activity.  MSBs include organizations that transmit or convert money.  To ensure compliance with the BSA, Congress also enacted a law establishing the Financial Crimes Enforcement Network ("FinCEN") as a bureau within the Treasury Department and describes FinCEN's powers and duties. FinCEN's responsibilities include implementing, administering, and enforcing compliance with the BSA.  All persons or entities who conduct, control, manage, supervise, direct, or own a money transmitting business must register with FinCEN as a money transmitting business.

3.       An MSB is required by the BSA, and regulations promulgated thereunder, to report each transaction involving more than ten thousand dollars ($10,000) in currency; these reports can be made by using FinCEN Form 104 which is commonly referred to as a Currency Transaction Report ("CTR"). Willful violations of the requirement to file CTRs are punishable as a criminal offense pursuant to Title 31, United States Code, Section 5322.

4.       As set forth below, the Defendant acted through its Managing Officers, directors, employees, and agents, including Managing Officer A, who was acting within the scope of their employment for and on behalf of the Defendant.

C.       Relevant Entities and Individuals

5.       Beginning on or about February 14, 2016, the Defendant operated as an MSB, and the Defendant maintained registration as a money transmitting business with FinCEN.  In its capacity as an MSB, the Defendant owned and operated Coinucopia kiosks in the State of California, some of which were located in Sacramento County within the State and Eastern District of California.  At the Coinucopia kiosks, the Defendant's customers exchanged United States currency for Bitcoin, a decentralized digital currency.  The Coinucopia kiosk originally lacked any software that enabled compliance with the BSA. To help ensure compliance with the BSA, Defendant designed, developed, and tested custom software which allowed transaction limits to be implemented starting in late 2017.

6.       Managing Officer A acted as a member, manager, and president of the Defendant.

7.       Managing Officer A oversaw the operation of business transacted by the Defendant, controlled bank accounts in the Defendant's name, and managed assets acquired by the Defendant.

II.     Conspiracy to Commit an Offense Against the United States

8.     The allegations contained in paragraphs 1 - 7 of this information are realleged and incorporated by reference.  From on or about February 14, 2016, and continuing thereafter until on or about November 20, 2019, in Sacramento County in the State and Eastern District of California and elsewhere, the Defendant, AMANI INVESTMENTS, LLC, dba Coinucopia, knowingly and willfully conspired and agreed with others both known and unknown, to commit an offense against the United States, that is: (1) to willfully fail to file FinCEN Forms 104 as prescribed by the applicable statute and regulations, in violation of Title 31, United States Code, Sections 5313 and 5322.

A.     Manner and Means of the Conspiracy

10.     It was part of the conspiracy that the Defendant acquired and operated Coinucopia kiosks which allowed customers to exchange Bitcoin for United States currency.

11.     It was further part of the conspiracy that the Defendant advertised its money transmitting business and services available through the Coinucopia kiosks on various online platforms, including on Backpage.com, a website where users advertised illegal adult services.  Consequently, the Defendant's services were at a heightened risk of being used in transactions involving criminally-derived proceeds.  However, Defendant stopped advertising its services on Backpage in 2017 and took active steps to mitigate such users from using its network.

12.     It was further part of the conspiracy that on occasion users of the Coinucopia kiosks could not complete transactions because the amounts exceeded transaction limits or exceeded the amount of currency present in the particular Coinucopia kiosk.  At least a portion of these customers contacted Managing Officer A through a Coinucopia customer-support link.  On these occasions, the Defendant conducted the requested transactions with customers where the customers and the Defendant exchanged Bitcoin for United States currency at in-person meetings, through the use of internet applications, or via the United States Postal Service.  At times, these transactions involved the exchange of United States currency for Bitcoin in amounts exceeding ten thousand dollars ($10,000.00).  Such transactions required that the Defendant file a CTR; however, the Defendant knowingly and willfully failed to file CTRs as required by the BSA.  For such transactions, the Defendant acted within its capacity as an MSB and money transmitting business, and the Defendant charged and collected a fee

based upon a percentage of the total amount of money involved in a transaction.  For instance, between February 14, 2016 and November 20, 2019, Defendant conducted in-person exchanges of Bitcoin for cash with two Coinucopia customers (hereinafter referred to as "Customer 1" and "Customer 2").  Customer 1 and Customer 2 began the in-person exchanges after contacting Coinucopia customer support following Bitcoin-for-cash exchanges at a Coinucopia kiosk that depleted the kiosk of its available cash.  After contacting customer support, Defendant, through Managing Officer A or other persons who worked for the Defendant, conducted in-person exchanges of Bitcoin for cash where the customer gave the Defendant Bitcoin in exchange for cash.  For these transactions, Defendant charged a percentage of the total transaction as a transaction fee above a market-value determined for the Bitcoin. The Defendant and Customer 1 conducted in-person transactions in this manner approximately once per week over a two-year period.  In total, the Defendant traded approximately $520,000.00 in cash for Bitcoin over the two-year period.  On occasion, the trades with Customer 1 involved amounts in excess of $10,000.00 in cash; however, the Defendant failed to file CTR's documenting any of the transactions conducted with Customer 1 as required by the BSA.   The Defendant and Customer 2 conducted in-person transactions trading Bitcoin for cash approximately seven times between February 14, 2016 and December of 2016.  For each transaction, the Defendant received Bitcoin from Customer 2 and gave more than $10,000.00 cash to Customer 2.  The amount of cash the Defendant provided to Customer 2 for theses seven transactions totaled between $250,000.00 and $400,000.  The Defendant did not file a CTR for any of the transactions conducted with Customer 2 as required by the BSA.  It was further part of the conspiracy that the Defendant used proceeds generated through transactions trading Bitcoin for United States currency, including ones where a CTR should have been filed, to purchase a 2019 Mercedes-Benz E63 AMG-S, VIN: DDZF8KB8KA608709 ("the Mercedes").  Managing Officer A used the Mercedes to facilitate transactions performed on behalf of the Defendant.

      B.    Overt Acts

      13.    To accomplish the objectives of the conspiracy, within the State and Eastern District of California, and elsewhere, and in furtherance thereof, the Defendant, Managing Officer A, and others, both known and unknown, committed and caused to be committed, the following overt acts in furtherance of the conspiracy:

14.     On or about the dates listed below, the Defendant, a domestic financial institution, was involved in a transaction for the payment, receipt, and transfer of United States coin and currency in an amount and denomination in excess of ten thousand dollars ($10,000.00) and willfully failed to file FinCEN Form 104 as prescribed by Title 31, Unites States Code, Section 5313, in violation of Title 31, United States Code, Section 5322:

| DATE | TRANSACTION DESCRIPTION | AMOUNT INVOLVED IN THE TRANSACTION |
| --- | --- | --- |
| July 18, 2017 | An exchange of United States currency and Bitcoin between the Defendant and a law enforcement officer acting in an undercover capacity | $13,330.00 |
| August 16, 2017 | An exchange of United States currency and Bitcoin between the Defendant and Customer Number 1 | $10,750.00 |
| September 26, 2017 | An exchange of United States currency and Bitcoin between the Defendant and Customer Number 1 | $15,350.00 |
| October 10, 2017 | An exchange of United States currency and Bitcoin between the Defendant and a law enforcement officer acting in an undercover capacity | $17,210.00 |
| October 19, 2017 | An exchange of United States currency and Bitcoin between the Defendant and Customer Number 1 | $31,260.00 |
| December 8, 2017 | An exchange of United States currency and Bitcoin between the Defendant and a law enforcement officer acting in an undercover capacity | $24,580.00 |
| April 26, 2018 | An exchange of United States currency and Bitcoin between the Defendant and Customer Number 1 | $16,260.00 |

15.     All in violation of Title 18, United States Code, Section 371.

FORFEITURE ALLEGATION:

1.     The allegations contained in Count 1 of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 31, United States Code, Section 5317.

2.     Pursuant to Title 31, United States Code, Section 5317, upon conviction of a conspiracy

to violate Title 31, United States Code, Sections 5322, in violation of Title 18, United States Code, Section 371, the Defendant, AMANI INVESTMENTS, LLC, shall forfeit to the United States of America all property, real or personal, involved in the offense and any property traceable thereto. The property to be forfeited includes the following:

- 2019 Mercedes-Benz E63 AMG-S, VIN: WDDZF8KB8KA608709, California License Number 1UEV351
- Approximately 0.041836 Bitcoin
- $1,000,000.00 in United States Currency comprised of the following:
  - Approximately $3,050.00 Seized from Lamassu BTM Located in Oakland, California;
  - Approximately $51,590.00 Seized from Lamassu BTM Located in San Jose, California;
  - Approximately $2,475.00 Seized from Lamassu BTM Located in Oakland, California;
  - Approximately $1,945.00 Seized from Lamassu BTM Located in San Jose, California;
  - Approximately $20,090.00 Seized from Lamassu BTM Located in San Francisco, California;
  - Approximately $3,115.00 Seized from Lamassu BTM Located in Hayward, California;
  - Approximately $24,890.00 Seized from Lamassu BTM Located in Berkeley, California;
  - Approximately $3,800.00 Seized from Lamassu BTM Located in Cotati, California;
  - Approximately $3,325.00 Seized from Lamassu BTM Located in San Pablo, California;
  - Approximately $3,785.00 Seized from Lamassu BTM Located in Pleasant Hill, California;
  - Approximately $2,835.00 Seized from Lamassu BTM Located in Concord, California;
  - Approximately $6,480.00 Seized from Lamassu BTM Located in Sacramento, California;
  - Approximately $22,660.00 Seized from Lamassu BTM Located in Roseville, California;
  - Approximately $14,805.00 Seized from Lamassu BTM Located in Sacramento, California;
  - Approximately $10,340.00 Seized from Lamassu BTM Located in Stockton,

California;

o   Approximately $6,010.00 Seized from Lamassu BTM Located in Sacramento, California;

o   Approximately $6,125.00 Seized from Lamassu BTM Located in Sacramento, California;

o   Approximately $130.00 Seized from Lamassu BTM Located in Fairfield, California;

o   Approximately $5,915.00 Seized from Lamassu BTM Located in Vallejo, California; and

o   Approximately $806,635.00 in U.S. currency seized from Managing Officer A's residence.

- One (1) Bitcoin Casascius Coin
- One (1) Canadian Gold Coin
- One (1) American Eagle Gold Coin
- One (1) Cummins Allison Money Counter

3.   If any of the property described above, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 31, United States Code, Section 5317(c) and Title 28, United States Code, Section 2461(c).

Dated:   __January 19, 2023__          PHILLIP A. TALBERT
                                        United States Attorney


                                By:   _____
                                        VERONICA M.A. ALEGRIA
                                        ROBERT C. ABENDROTH

**United States v. AMANI INVESTMENTS, LLC**
**Penalties for Information**

## COUNT 1:

VIOLATION:      18 U.S.C. § 371 – Conspiracy to Commit an Offense

PENALTIES:      A term of organizational probation of up to five years, or a fine of up to $500,000; or both fine and probation

SPECIAL ASSESSMENT: $400 (mandatory on each count)