PHILLIP A. TALBERT
United States Attorney
VERONICA M.A. ALEGRIA
ROBERT C. ABENDROTH
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. |
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| AMANI INVESTMENTS, LLC, | |
| Defendant. | |

## I.     INTRODUCTION

**A.**    <u>Scope of Agreement.</u>

The information in this case charges the defendant with a violation of 18 U.S.C. § 371 – Conspiracy to Commit an Offense Against the United States. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.**    <u>Court Not a Party.</u>

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances

concerning the criminal activities of defendant, including activities which may not have been charged in the information.  The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw its guilty plea, and it will remain bound to fulfill all of the obligations under this plea agreement.  The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence it will receive.

## II.   DEFENDANT'S OBLIGATIONS

### A.   Guilty Plea.

The defendant will plead guilty to the one-count information filed in this case.  The defendant agrees that it is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case.  The defendant understands and agrees that it will not be allowed to withdraw its plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by it in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement.  The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

The defendant acknowledges that under the United States Constitution it is entitled to be indicted by a grand jury on the charges to which it is pleading guilty and that pursuant to Fed. R. Crim. P. 7(b) it agrees to waive any and all rights it has to being prosecuted by way of indictment to the charges set forth in the information.  The defendant agrees that at a time set by the Court, it will sign a written waiver of prosecution by Indictment and consent to proceed by Information rather than by Indictment.

**B.      Fine.**

The defendant reserves the right to argue to Probation and at sentencing that it is unable to pay a fine, and that no fine should be imposed. The defendant understands that it is its burden to affirmatively prove that it is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation. The government retains the right to oppose the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offense.

**C.      Special Assessment.**

The defendant agrees to pay a special assessment of $400.00 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if it fails to pay the assessment prior to that hearing.

**D.      Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).**

If the defendant violates this plea agreement in any way, withdraws its plea, or tries to withdraw its plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application or agreements regarding arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which it pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for

any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### E. Forfeiture.

The defendant agrees to forfeit to the United States voluntarily and immediately all of its right title and interest to any and all assets subject to forfeiture pursuant to 31 U.S.C. § 5317. Those assets include the following:

1. 2019 Mercedes-Benz E63 AMG-S, VIN: WDDZF8KB8KA608709, California License Number 1UEV351
2. Approximately 0.041836 Bitcoin
3. One (1) Bitcoin Casascius Coin

4. One (1) Canadian Gold Coin
5. One (1) American Eagle Gold Coin
6. One (1) Cummins Allison Money Counter
7. A sum of $1,000,000.00 in United States currency comprised of the following items previously seized:

    a) Approximately $3,050.00 Seized from Lamassu BTM Located in Oakland, California;

    b) Approximately $51,590.00 Seized from Lamassu BTM Located in San Jose, California;

    c) Approximately $2,475.00 Seized from Lamassu BTM Located in Oakland, California;

    d) Approximately $1,945.00 Seized from Lamassu BTM Located in San Jose, California;

    e) Approximately $20,090.00 Seized from Lamassu BTM Located in San Francisco, California;

    f) Approximately $3,115.00 Seized from Lamassu BTM Located in Hayward, California;

    g) Approximately $24,890.00 Seized from Lamassu BTM Located in Berkeley, California;

    h) Approximately $3,800.00 Seized from Lamassu BTM Located in Cotati, California;

    i) Approximately $3,325.00 Seized from Lamassu BTM Located in San Pablo, California;

    j) Approximately $3,785.00 Seized from Lamassu BTM Located in Pleasant Hill, California;

    k) Approximately $2,835.00 Seized from Lamassu BTM Located in Concord, California;

    l) Approximately $6,480.00 Seized from Lamassu BTM Located in Sacramento,

California;

m) Approximately $22,660.00 Seized from Lamassu BTM Located in Roseville, California;

n) Approximately $14,805.00 Seized from Lamassu BTM Located in Sacramento, California;

o) Approximately $10,340.00 Seized from Lamassu BTM Located in Stockton, California;

p) Approximately $6,010.00 Seized from Lamassu BTM Located in Sacramento, California;

q) Approximately $6,125.00 Seized from Lamassu BTM Located in Sacramento, California;

r) Approximately $130.00 Seized from Lamassu BTM Located in Fairfield, California;

s) Approximately $5,915.00 Seized from Lamassu BTM Located in Vallejo, California; and

t) Approximately $806,635.00 in U.S. currency Seized from Managing Officer A's residence.

The defendant agrees that the listed assets constitute property involved in a conspiracy to violate 31 U.S.C. § 5313.

The defendant agrees to fully assist the government in the forfeiture of the listed assets and to take whatever steps are necessary to pass clear title to the United States. The defendant shall not sell, transfer, convey, or otherwise dispose of any of its assets, including but not limited to, the above-listed assets.

The defendant, and its Managing Officers, agree not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated. The defendant agrees to waive its right to notice of any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a claim in that forfeiture proceeding.

The defendant knowingly and voluntarily waives its right to a jury trial on the forfeiture of

assets. The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets in any proceeding. The defendant agrees to waive any jeopardy defense, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States, the State of California or its subdivisions.

The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defenses or defects that may pertain to the forfeiture.

### F. Asset Disclosure.

The defendant agrees to make a full and complete disclosure of its assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Disclosure Statement" within three (3) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if it fails to complete truthfully and provide the described documentation to the United States Attorney's Office within the allotted time, it will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.D above.

Defendant expressly authorizes the United States to immediately obtain a credit report to evaluate defendant's ability to satisfy any monetary penalty imposed by the court. Defendant also authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

### G. Corporate Authorization.

AMANI INVESTMENTS, LLC through its undersigned Managing Officer represents that it is authorized to enter this Plea Agreement. At the time of signing, Defendant shall provide to the United States a written corporate resolution, to be filed with the Court, in the form of notarized legal documents certifying that Defendant is authorized to enter into and comply with all of the provisions of this Plea Agreement. The resolutions shall certify that all corporate formalities have been observed. A duly authorized Managing Officer will attend the entry of plea and sentencing hearings.

### III.     THE GOVERNMENT'S OBLIGATIONS

**A.     Dismissals/Other Charges.**

The government agrees not to bring any other charges arising from the conduct outlined in the Factual Basis attached hereto as Exhibit A against the Defendant or its Managing Officers.  The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in paragraphs II.D (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), VI.B (Estimated Guideline Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein.

**B.     Recommendations.**

1.     Fine.

Should the Court determine that a fine is appropriate in this case, the government will recommend that the Court impose a fine in an amount to be determined by the Court but within the applicable guideline range as determined by the Court.

2.     Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of its offense level if the defendant clearly demonstrates acceptance of responsibility for its conduct as defined in U.S.S.G. § 3E1.1.  This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

**C.     Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, its attorney, Probation, or the Court.  The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, conspiracy to commit an offense against the United States:

First, beginning on or about February 1, 2016, and ending on or about November 20, 2019, there was an agreement between two or more persons to commit at least one crime as charged in the information;

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act on or after the dates listed in the Information for the purpose of carrying out the conspiracy.

The elements of the offense that was the object of the conspiracy are:

First, a person or entity had an obligation to report a transaction pursuant to the Bank Secrecy Act, and

Second, the person or entity knew of the obligation to file the report and willfully failed to file the report.

The defendant fully understands the nature and elements of the crimes charged in the information to which it is pleading guilty, together with the possible defenses thereto, and has discussed them with its attorney.

## V. MAXIMUM SENTENCE

A. **Maximum Penalty.**

The maximum sentence that the Court can impose is a fine of $500,000, a five-year period of organizational probation and a special assessment of $400.  By signing this plea agreement, the defendant further agrees, as noted above, that it will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

B. **Violations of Probation.**

The defendant understands that if it violates a condition of probation at any time during the term of probation, the Court may revoke the term of probation.

## VI.     SENTENCING DETERMINATION

### A.     Statutory Authority.

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence.  The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence.  The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines.  The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

### B.     Estimated Guideline Calculation.

The government and the defendant agree that the following is their present best estimate of the sentencing guidelines variables.  These estimates shall not be binding on the Court, the Probation Office, or the parties:

1. Base Offense Level:  20 - § 2S1.3(a)(2) (involving over $500,000)
2. +2 – 2S1.3(b)(2) – (a pattern of unlawful activity involving over $100,000 within 12 months)
3. Adjusted Offense Level: 22
4. After Acceptance of Responsibility: 19
5. Criminal History:  I
6. Sentencing Range:   Fine $15,000 - $150,000

The defendant is free to recommend to the Court whatever sentence it believes is appropriate under 18 U.S.C. § 3553(a).  The government agrees that it will recommend that the Court impose a fine within the applicable guideline range as determined by the Court.

///

///

## VII.  WAIVERS

### A.  Waiver of Constitutional Rights.

The defendant understands that by pleading guilty it is waiving the following constitutional rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on its behalf; (f) to confront and cross-examine witnesses against it; and (g) not to be compelled to incriminate itself.

### B.  Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal its guilty plea, conviction, and sentence.  The defendant agrees as part of its plea, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximum for the offense to which it is pleading guilty.  The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty.  The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case.  The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever

PLEA AGREEMENT 11

attempts to vacate its plea(s), dismiss the underlying charges, or modify or set aside its sentence on any of the counts to which it is pleading guilty, the government shall have the rights set forth in Section II.D herein.

C. **Waiver of Attorneys' Fees and Costs.**

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

VIII. **ENTIRE PLEA AGREEMENT**

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

IX. **APPROVALS AND SIGNATURES**

A. **Defense Counsel.**

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 1-19-23

TOM JOHNSON
BRIAN KLEIN

Attorneys for Defendant

B. **Defendant:**

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my

case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 1/19/23

AMANI INVESTMENTS, LLC
Defendant

C. **Attorney for United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated: January 19, 2023

PHILLIP A. TALBERT
United States Attorney

VERONICA M.A. ALEGRIA
ROBERT C. ABENDROTH
Assistant United States Attorneys

EXHIBIT "A"

Factual Basis for Plea(s)

AMANI INVESTMENTS, LLC (hereinafter "Defendant") is a California Limited Liability Company which was headquartered in Folsom, California in the State and Eastern District of California. Managing Officer A transacted business on behalf of the Defendant and controlled the Defendant's assets and accounts. The Defendant owned and operated Coinucopia kiosks in the State of California, some of which were located in Sacramento County within the State and Eastern District of California. At the Coinucopia kiosks, the Defendant and its customers exchanged United States currency for Bitcoin, a decentralized digital currency.

The Defendant operated as a Money Services Business ("MSB") as well as a money transmitting business registered as such with the Financial Crimes Enforcement Network ("FinCEN"). Pursuant to the Bank Secrecy Act ("BSA"), the Defendant as an MSB was required to report each transaction involving more than ten thousand dollars ($10,000.00) in currency through the filing of FinCEN Form 104 which is commonly referred to as a Currency Transaction Report ("CTR"). The Defendant knew of the filing/reporting requirement. Moreover, the Defendant knew that its kiosks were at a heightened risk for use in transactions involving criminally-derived proceeds because the Defendant had advertised its kiosks on Backpage.com, a website where users advertised illegal adult services. However, Defendant stopped advertising its services on Backpage in 2017 and took active steps to mitigate such users from using its network. Beginning in late 2017, Defendant designed and used software on its kiosks to set transaction limits designed to comply with the BSA.

On occasion users of the Defendant's Coinucopia kiosks could not complete transactions because the amounts exceeded transaction limits or exceeded the amount of currency present in the particular kiosk. At least a portion of these customers contacted Managing Officer A through a Coinucopia customer-support link. On these occasions, the Defendant, through Managing Officer A, conducted the requested transactions with customers where the customers and the Defendant exchanged Bitcoin for United States currency at in-person meetings, through the use of internet applications, or via the United States Postal Service. At times, these transactions involved the exchange of United States currency for Bitcoin in amounts exceeding ten thousand dollars ($10,000.00). Such transactions required that the Defendant file a CTR; however, the Defendant knowingly and willfully failed to file CTRs as required by the BSA. For such transactions, the Defendant acted within its capacity as an MSB and money transmitting business, and the Defendant charged and collected a fee based upon a percentage of the total amount of money involved in a transaction. Specifically, the Defendant willfully failed to file CTR's following transactions conducted on or about July 18, 2017, August 16, 2017, September 26, 2017, October 10, 2017, October 19, 2017, December 8, 2017, and April 26, 2018 where each transaction involved an exchange of United States currency in excess of $10,000.00.

Using money generated from its Coinucopia kiosks and bitcoin exchanges, the Defendant purchased a 2019 Mercedes-Benz E63 AMG-S, VIN: DDZF8KB8KA608709, California License Number 1UEV351 ("the Mercedes"). Between the dates listed in the information, Managing Officer A used the Mercedes to facilitate transactions performed on behalf of the Defendant by using the vehicle to travel to and from face-to-face exchanges of bitcoin for cash in violation of the BSA.

Additionally, between the dates listed in the information, Managing Officer A, acting on behalf of the Defendant, conducted in-person exchanges of Bitcoin for cash with two Coinucopia customers (hereinafter referred to as "Customer 1" and "Customer 2"). Customer 1 and Customer 2 began the in-person exchanges after contacting Coinucopia customer support following Bitcoin-for-cash exchanges at a Coinucopia kiosk that depleted the kiosk of its available cash. After contacting customer support, Defendant, through Managing Officer A or other persons who worked for the Defendant, conducted in-person exchanges of Bitcoin for cash where the customer gave the Defendant Bitcoin in exchange for cash. For these transactions, Defendant charged a percentage of the total transaction as a transaction fee above a market-value determined for the Bitcoin. The Defendant and Customer 1 conducted in-person transactions in this manner approximately once per week over a two-year period. In total, the Defendant traded approximately $520,000.00 in cash for Bitcoin over the two-year period. On occasion, the trades with Customer 1 involved amounts in excess of $10,000.00 in cash; however, the Defendant failed to file CTR's documenting any of the transactions conducted with Customer 1 as required by the BSA. The Defendant and Customer 2 conducted in-person transactions trading Bitcoin for cash approximately

seven times between February 14, 2016 and December of 2016.  For each transaction, the Defendant received Bitcoin from Customer 2 and gave more than $10,000.00 cash to Customer 2.  The amount of cash the Defendant provided to Customer 2 for theses seven transactions totaled between $250,000.00 and $400,000.00.  The Defendant did not file a CTR for any of the transactions conducted with Customer 2 as required by the BSA.

Following an investigation, on November 20, 2019, agents executed search warrants at various locations where the Defendant conducted its transactions and stored records.  During those search warrants, agents seized, among other items, the Mercedes, Coinucopia kiosks containing United States currency, a sum of United States currency from Managing Officer A's residence, a Bitcoin Casascius Coin, a Canadian Gold Coin, an American Eagle Gold Coin, a Cummins Allison Money Counter, and approximately 0.041836 Bitcoin.

The parties agree and stipulate that the amount of United States currency involved in the Conspiracy charged in Count 1 of the information totals approximately $1,000,000.00.  The parties further agree and stipulate that the $1,000,000.00 in property involved in the Conspiracy charged in Count 1 and forfeitable to the United States shall be comprised of the following following items seized during the investigation:

- Approximately $3,050.00 Seized from Lamassu BTM Located in Oakland, California;
- Approximately $51,590.00 Seized from Lamassu BTM Located in San Jose, California;
- Approximately $2,475.00 Seized from Lamassu BTM Located in Oakland, California;
- Approximately $1,945.00 Seized from Lamassu BTM Located in San Jose, California;
- Approximately $20,090.00 Seized from Lamassu BTM Located in San Francisco, California;
- Approximately $3,115.00 Seized from Lamassu BTM Located in Hayward, California;
- Approximately $24,890.00 Seized from Lamassu BTM Located in Berkeley, California;
- Approximately $3,800.00 Seized from Lamassu BTM Located in Cotati, California;
- Approximately $3,325.00 Seized from Lamassu BTM Located in San Pablo, California;
- Approximately $3,785.00 Seized from Lamassu BTM Located in Pleasant Hill, California;
- Approximately $2,835.00 Seized from Lamassu BTM Located in Concord, California;
- Approximately $6,480.00 Seized from Lamassu BTM Located in Sacramento, California;
- Approximately $22,660.00 Seized from Lamassu BTM Located in Roseville, California;
- Approximately $14,805.00 Seized from Lamassu BTM Located in Sacramento, California;
- Approximately $10,340.00 Seized from Lamassu BTM Located in Stockton, California;
- Approximately $6,010.00 Seized from Lamassu BTM Located in Sacramento, California;
- Approximately $6,125.00 Seized from Lamassu BTM Located in Sacramento, California;
- Approximately $130.00 Seized from Lamassu BTM Located in Fairfield, California;
- Approximately $5,915.00 Seized from Lamassu BTM Located in Vallejo, California; and
- Approximately $806,635.00 in United States currency (seized from Managing Officer A's residence on November 20, 2019).

The parties further agree and stipulate that the following items constitute property, real or personal, involved in the offense charged in Count 1 of the information:

- One (1) Bitcoin Casascius Coin
- One (1) Canadian Gold Coin
- One (1) American Eagle Gold Coin
- One (1) Cummins Allison Money Counter
- Approximately 0.041836 Bitcoin

Dated: 1/19/23

AMANI INVESTMENTS, LLC
Defendant